# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DOMINICK IMBRAGUGLIO #522412**

                                 **CIVIL ACTION**

**VERSUS**

                                 **NO. 22-18-JWD-EWD**

**JAMES M. LEBLANC, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 56) filed by James M. LeBlanc, Secretary of the Department of Public Safety and Corrections ("DPSC"); Seth Smith, Warden of Elayn Hunt Correctional Center ("EHCC") and Chief of Operations of DPSC; Jerry Goodwin, Warden of David Wade Correctional Center ("DWCC"); Darryl Vannoy, Warden of Louisiana State Penitentiary ("LSP"); Timothy Hooper, Warden of EHCC and LSP; Paul Smith, Assistant Warden of LSP; Chadwick Darbonne, Assistant Warden of LSP; Vincent Knight, corrections officer at LSP; Todd Moreau, corrections officer at LSP; Herman Holmes, corrections officer at LSP; Tailor Graffia, agent at LSP; Sheri Barton, agent at LSP, and Lindsey Metz, agent at LSP, all moving in their individual and official capacities, and all referred to collectively as "Defendants."  Plaintiff Dominick Imbraguglio ("Plaintiff") opposes the motion, (Doc. 60), and Defendants have filed a reply, (Doc. 61).  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, Defendants' motion is granted.

## I.    Relevant Factual Background

Plaintiff is an inmate housed in LSP. (*Compl.*, Preamble, Doc. 1 at 3.)   On or about June 14, 2014, Plaintiff was housed at EHCC, and there he was charged with simple escape. (*Id.* ¶ 3.) Consequently, he was "reclassified to extended lockdown custody and placed upon closed-cell restriction ('CCR')[.]" (*Id.*)

Plaintiff claims that, as a result of this infraction, he was housed in solitary confinement at three different DPSC facilities (EHCC, DWCC, and LSP), from June 14, 2014, to July 2, 2021, "without exception and without any solitary confinement break" in violation of the Louisiana Administrative Code tit. 22, pt. I, § 341, which lists the penalty for such an infraction as 30 days confinement to dormitory, room, or cell and/or up to 10 days of disciplinary detention, for each violation. (*Id.* ¶¶ 4, 6, 7, 8.)

Indeed, Plaintiff "has been held in solitary confinement for a total of 2,708 days over a period of about seven and a half years, or 2,767 days from June 14, 2014, until the time of this filing" of the *Complaint*. (*Id.* ¶ 5.)  He has only been out of solitary for 59 days on two separate occasions: on July 2, 2021, for 47 days, and September 20, 2021, for 17 days. (*Id.*)

Plaintiff went to the Lockdown Review Board (the "LRB") every 90 days during his time in solitary confinement at each facility. (*Id.* ¶ 10.)  After each hearing the LRB decided that Plaintiff would remain in solitary confinement because of "the original nature of his lockdown, Simple Escape," even though this decision violates the above cap on confinement from the Administrative Code. (*Id.*)

Further, on or about January 27, 2021, LSP started to use "an unauthorized schedule of punishment for inmate infractions" named the "Disciplinary Sanctions Matrix," ("Matrix").  (*Id.* ¶

11.)  Plaintiff claims that the "schedule of discipline is not legislatively authorized" for the DPSC and that it "institutes sanctions that are more than nine times the legislative rules." (*Id*.)

On at least four occasions detailed in the *Complaint*, Plaintiff was sentenced pursuant to the Matrix to time in solitary confinement well beyond what was allowed by the Administrative Code. (*See id.* ¶¶ 12–15.)  Plaintiff appealed each time, but those appeals were denied by LSP officials Warden Timothy Hooper, Deputy Warden Joseph Lamartiniere, and Assistant Warden Tim Delaney. (*Id.* ¶ 16.)

Plaintiff claims these sanctions, and his consistent placement in solitary, violates not just the Administrative Code but also "*Ralph v. Dees*, C.A.71-94 USDC (Md. LA), which addressed the entire disciplinary process, including isolation/detention, specifically stating that '*No inmate shall be confined in isolation for a period exceeding ten consecutive days, nor shall [any] inmate [be] confined in isolation for more than 20 days of each calendar month*.' " (*Compl.* ¶ 17, Doc.1) All of this is also "in accordance with federal court issued orders in compliance with the due process guarantees specified in *Wolff v. McDonnell*[,] 94 S. Ct[.] 2963 (1974)." (*Compl.* ¶ 17, Doc. 1.)

Additionally, starting around January 27, 2021, and continuing, Plaintiff was only allowed to leave his 6' x 9' cell in solitary confinement for fifteen minutes. (*Id.* ¶ 18.)  Plaintiff could only do so to shower. (*Id.*)  Further, after the January and March disciplinary hearings, Plaintiff was "subjected to strip searches and cell searches every twelve hours[.]" (*Id.* ¶ 19.)  Defendants did so despite *Woodfox v. Phelps* No. 209,535 'H' 19th JDC (1978))" and despite the Administrative Code's prohibition on using such actions as punishment. (*Compl.* ¶ 19, Doc. 1.)  There is no penological interest for these searches, as Plaintiff is only let out of his cell for fifteen minutes a day and as he is fully restrained, escorted, and observed during that time. (*Id.* ¶ 20.)

Plaintiff alludes to a due process violation for being unable to "appeal the loss of visitation privileges, or the implementation of strip searches and cell searches every twelve hours[,]" again, in violation of the Administrative Code. (*Id.* ¶ 21.)   Further:

> [T]he circumstances and conditions under which Plaintiff Imbraguglio were held in solitary confinement include but are not limited to: only fifteen minutes a day outside of his cell, and then only to shower[;] possession of no personal property: possession of only one pair of boxers, one towel, one pair of socks, no use of telephone, radio, or television; no access to reading materials; and visitation privileges.

(*Id.* ¶ 22.)   Moreover, Plaintiff alleges that his visitation privileges were suspended for three months twice in 2021, even though the Administrative Code provides that such privileges can only be lost "[i]f the violation involves visiting." (*Id.* ¶ 23 (italics omitted).)

Plaintiff alleges that his "excessive prolonged exposure to solitary confinement" has resulted in "extreme mental health disabilities for which he was prescribed Loxapine 10 mg for schizophrenia, Trazodone 150 mg for depression and anxiety, and Sertraline 50 mg for social anxiety, phobia, obsessive compulsive disorder, post-traumatic stress disorder, self-harm, and depression, which conditions continue to exacerbate." (*Id.* ¶ 24.)   Plaintiffs allege other injuries as well, (*id.* ¶ 25), all of which were caused by various actions of Defendants, including (a) refusing to intervene to prevent the use of excessive solitary confinement; (b) fully restraining Plaintiff and subjecting him to excessive cell and strip searches without cause; (c) refusing to intervene to stop the use of the unlawful Matrix program; and (d) other actions committed by each specific Defendant. (*Id.* ¶ 26; *see id.* ¶¶ 27–46.)   Plaintiff seeks $350,000 in general damages, an unknown amount of medical expenses, $650,000 in punitive damages, attorneys' fees, and all other relief to which he may be entitled or which a jury may award. (*Id.*¶ 47.)

4

## II.    RULE 12(B)(1) MOTION (OFFICIAL CAPACITY CLAIMS)

### A.  Relevant Standard

In *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001), the Fifth Circuit explained the

following about the Rule 12(b)(1) standard:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
>
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Id.* at 161.

### B. Parties' Arguments

Defendants assert that "it is well established that suits against state officials in their official capacities for monetary damages are barred by the Eleventh Amendment." (Doc. 56-1 at 11.) Thus, these claims should be dismissed. (*Id.*)

Plaintiff responds that "Eleventh Amendment qualified immunity" is a "fact driven issue, considered on an individual case basis." (Doc. 60 at 8.) Plaintiff maintains that these issues are best resolved later in the case. (*Id.*) Plaintiff concludes on this issue, "given the judicially provided analysis on" the issue that Plaintiff's constitutional rights were violated, "that the Eleventh Amendment barring such claims under qualified immunity is easily defeated and the Defendant's are in fact liable to Mr. Imbraguglio for the claims asserted and not shielded by qualified immunity." [sic throughout] (*Id.*)

In reply, Defendants assert, " Plaintiff improperly responds to this rule [about the Eleventh Amendment] with analysis regarding whether qualified immunity should be awarded to these defendants. However, that issue is not before the court, and [P]laintiff's arguments should not be considered." (Doc. 61 at 7.) Thus, Defendants say, all claims for monetary damages against Defendants in their official capacity should be dismissed. (*Id.*)

### C. Applicable Law

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It is clear, of course, that in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).

Similarly, "the Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 101 (cleaned up). Accordingly, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)).

Indeed, "[t]he Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.' " *Murray v. LeBlanc*, No. 21-592, --- F. Supp. 3d ---, 2022 WL 4361738, at *7 (M.D. La. Sept. 20, 2022) (deGravelles, J.) (quoting *Griffin v. La. State Bd. of Nursing*, No. 21-303, 2021 WL 5239585, at *5 (M.D. La. Nov. 10, 2021) (deGravelles, J.) (quoting *Williams v. Louisiana*, No. 17-453, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019) (deGravelles, J.) (quoting *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga*, 535 U.S. 613, 617 (2002))))). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.' " *Id.* (quoting *Griffin,* 2021 WL 5239585, at *5 (quoting *Williams*, 2019 WL 1003645, at *4 (internal citations and quotations omitted))).

Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123 [ ] (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity." *Aguilar*, 160 F.3d at 1054. "The [*Ex Parte Young*] Court held that enforcement of an unconstitutional law is not an official act because a state

can not confer authority on its officers to violate the Constitution or federal law." *Id.* (citing *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Id.* (citing *Saltz v. Tenn. Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

### D.  Analysis

"There is little dispute on this issue. Plaintiffs do not seriously argue that DPSC is not an 'arm of the state' entitled to Eleventh Amendment immunity, nor could it." *Murray*, 2022 WL 4361738, at *8 (citing *Hanna v. LeBlanc*, 716 F. App'x 265, 268 (5th Cir. 2017) (per curiam) ("DPS & C, as a Louisiana executive department . . . [is] entitled to the Eleventh Amendment's protection." (citations omitted)). Further, Plaintiff makes no claims that would invoke the *Ex parte Young* exception; rather, he asserts only claims for monetary damages. (*See Compl.* ¶ 47, Prayer, Doc. 1 at 21–23.)  Thus, Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment.

Further, Plaintiff's discussion of qualified immunity is misplaced.  "Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 508 (M.D. La. 2021) (deGravelles, J.) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987))).  "In determining whether an official enjoys [qualified] immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated

that right to the extent that an objectively reasonable person would have known." *Id.* (quoting *Gobert*, 463 F.3d at 345 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002))).

Conversely, as Justice Stevens explained in his dissent in *Pennhurst*, "the Eleventh Amendment did more than simply prohibit suits brought by citizens of one State against another State. Rather, it exemplified the broader and more ancient doctrine of sovereign immunity, which operates to bar a suit brought by a citizen against his own State without its consent." 465 U.S. at 140–41 (Stevens, J., dissenting) (citations omitted).

In short, qualified immunity and the Eleventh Amendment are wholly distinct concepts. Even if Plaintiff's arguments about the former were correct (which is questionable), they would have little to do with the latter and the issue at hand. Accordingly, all claims for monetary damages against Defendants in their official capacity will be dismissed without prejudice, as barred by the Eleventh Amendment.

### III.    RULE 12(B)(6) MOTION (INDIVIDUAL CAPACITY CLAIMS)

#### A. Relevant Standard

In *Erickson v. Pardus*, 551 U.S. 89 (2007), the Supreme Court explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "

*Id.* at 93 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable

expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550

U.S. at 545) (emphasis added by *Lormand*)).

Later, in *In re Great Lakes Dredge & Dock Co. LLC.*, 624 F.3d 201 (5th Cir. 2010), the

Fifth Circuit explained:

> To avoid dismissal [under Fed. R. Civ. P. 12(b)(6)], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662 [ ] (2009) (quoting [*Twombly*, 550 U.S. 544]). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 [ ]. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. [*Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)] citing [*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)]). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

*Id.* at 210.

Analyzing the above case law, our brother in the Western District stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949, *Twombly*, 555 U.S. at 556, [ ]. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds

> upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 555 U.S. at 556 [ ].

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

Afterward, in *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011), the Fifth Circuit explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim for relief is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A claim for relief is implausible on its face when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.

*Id.* at 796 (cleaned up).

Finally, in *Thompson v. City of Waco, Texas*, the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

764 F.3d at 502–503 (cleaned up).

Additionally, the general rule regarding what may be considered in deciding a Rule 12(b)(6) motion is well known.

> In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.

*Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)). *See also Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). However, there is an exception to this rule: a court may consider documents attached to a motion to dismiss "where the complaint refers to the documents and they are central to the claim." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### B. Parties' Arguments

#### 1. Defendants' Original Memorandum (Doc. 56-1)

Defendants begin by emphasizing that solitary confinement is not per se cruel and unusual under the Eighth Amendment. (Doc. 56-1 at 5.) According to Defendants, Plaintiff must show that the prison conditions posed a " 'sufficiently serious' threat to his health' and "that prison officials acted with 'deliberate indifference' to such threat." (*Id.* (quoting *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).) Defendants say Plaintiff fails to satisfy either requirement. (*Id.*)

As to the first, the deprivation must be "objectively serious" such that it becomes cruel and unusual punishment. (*Id.* at 6.) Defendants discuss a few cases that purport to require deprivation of basic needs, and Defendants maintain that Plaintiff's situation falls short. (*Id.* at 6–7.) Rather, Plaintiff's allegations merely amount to conditions of solitary, which, again, are not *per se* cruel and unusual. (*Id.* at 7.) Inmates are not entitled to be housed in a particular part of the jail. (*Id.*)

Further, while Plaintiff complains of a long confinement, courts have found that longer confinements did not give rise to constitutional violations. (*Id.* at 7–8.)

As to the second requirement, Plaintiff fails to overcome the high standard required for deliberate indifference. (*Id.* at 8–9.) Plaintiff does not allege that any of these Defendants knew of a substantial risk to Plaintiff's health or disregarded that risk. (*Id.* at 9.)

Defendants close by arguing that various other allegations do not rise to a constitutional violation. (*Id.*) These include using restraints, losing visitation privileges, being subjected to strip searches and cell searches, and violations of the Louisiana Administrative Code. (*Id.* at 9–11.) Finally, Plaintiff has no due process claim, as he filed ARPs and attended hearings on disciplinary matters, yet all claims of violations related to these proceedings are conclusory. (*Id.* at 11.)

### *2. Plaintiff's Opposition (Doc. 60)*

Plaintiff maintains that he has alleged "violation[s] of the legislatively codified rules and procedures for adult offenders" and "judicially prescribed sanctions involving solitary confinement," all "in contravention of his constitutional rights." (Doc. 60 at 2.) Plaintiff emphasizes that he has been "consistently in solitary confinement for over 7 years, with only two stints out of solitary confinement totaling 59 days." (*Id.* at 4.) While courts have found periods of under fifteen months to be insufficient to give rise to a liberty interest, "the length of confinement is but one factor that is considered." (*Id.*)

 "Here, there is a 7 year period in solitary confinement together with other issues, however, the length of confinement is clearly in violation of established codified and Judicially prescribed sanctions." (*Id.*) Plaintiff claims that there is extensive literature on how isolation affects "mentally disturbed prisoners," and Plaintiff's mental health conditions have been exacerbated by Defendants' conduct. (*Id.*)

As to deliberate indifference, Plaintiff asserts that his mental health conditions were "well documented[,]" and Defendants had knowledge of this, yet continued his confinement. (*Id.* at 5.) "This issue of the stress of continued solitary confinement upon Mr. Imbraguglio has brought to [DPSC] officials' attention several times within the seven year period he has been kept therein." (*Id.*)

Plaintiff further states, "It bears noting that Mr. Imbraguglio is not complaining of the confinement itself, but rather the illegal unconstitutional length thereof." (*Id.* at 5.) Defendant says Plaintiff is merely complaining about "dissatisfaction" with his assignment, but, to the contrary, Plaintiff objects to his seven years in solitary. (*Id.* at 5–6.) Plaintiff again hammers that the punishment imposed on him, including the Matrix, violates Louisiana law and the consent decree in *Ralph v. Dees*, C.A. 71-94 (M.D. La.). (*Id.* at 6.) Plaintiff concludes by urging that Defendants are not entitled to qualified immunity and that their motion should be denied. (*Id.* at 7–8.)

### 3. Defendants' Reply (Doc. 61)

In reply, Defendants again argue that long-term solitary confinement is not a per se Eighth Amendment violation, but, Defendants say, that is exactly what Plaintiff argues. (Doc. 61 at 3.) Plaintiff concedes that he is complaining only about the length of confinement, (*id.* (citing Doc. 60 at 5)), but allegations that this amounts to a constitutional violation are conclusory. (*Id.*)

Even if Plaintiff was confined in violation of the Administrative Code and Matrix, that alone is insufficient to support a constitutional violation. (*Id.* at 3–4.) Violations of department rules do not, by themselves, support a violation of constitutional rights, and the Fifth Circuit has likewise rejected such a claim based on the *Ralph v. Dees* decree. (*Id.* at 4.) Plaintiff has failed to cite to any authority supporting a finding that this duration is constitutionally impermissible,

whereas Defendants rely on several cases showing longer durations were not violations. (*Id.* at 4–5.)

As to the elements of Plaintiff's claim, courts first look at whether an inmate was deprived of the basic necessities of life, but, here, Plaintiff complains only about the length of his confinement. (*Id.* at 5–6.)  Defendants rely upon *Fussel v. Vannoy*, No. 13-571, 2016 WL 3538376 (M.D. La. June 22, 2016), in support of their case. (*Id.* at 6.)  Plaintiff also fails to demonstrate the second requirement: deliberate indifference. (*Id.* at 7.)

### C.  Applicable Law

#### 1. Eighth Amendment Conditions of Confinement Claims Generally

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.' " *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021) (per curiam) (quoting U.S. Const. amend. VIII).   "Long-term solitary confinement is not per se cruel and unusual," but "there is a line where solitary confinement conditions become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment." *Id.* (cleaned up).

 "To state a claim for a violation of the Eighth Amendment based on conditions of confinement, a prisoner must allege (1) that the prison conditions pose a 'sufficiently serious' threat to his health, including his mental health, and (2) that prison officials acted with 'deliberate indifference' to such threat." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302 (1991))).

#### 2. First Element: Deprivation of Basic Human Need

"The Eighth Amendment 'does not mandate comfortable prisons, but neither does it permit inhumane ones.' " *LaVergne v. McDonald*, No. 19-709, 2020 WL 7090064, at *11 (M.D. La. Nov. 23, 2020) (quoting *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted)),

*report and recommendation adopted*, No. 19-709, 2020 WL 7081598 (M.D. La. Dec. 3, 2020). "At a minimum, prison officials 'must provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.' " *Id.* (quoting *Farmer*, 511 U.S. at 832). "They cannot deprive prisoners of the 'basic elements of hygiene' or the 'minimal civilized measure of life's necessities.' " *Id.* (quoting *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999) (quotation marks omitted)). "Prison conditions cannot inflict 'wanton and unnecessary' pain." *Id.* (quoting *Palmer*, 193 F.3d at 351).

In sum, "[t]o meet the first requirement," for a conditions of confinement claim, "the prisoner must show that the conditions, either alone or in combination, constitute an unquestioned and serious deprivation of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Hope*, 861 F. App'x at 582 (cleaned up). "And, conditions of confinement may be aggregated to rise to the level of a constitutional violation 'when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Id.* at 582–83 (citing *Wilson*, 501 U.S. at 304 (explaining that there may be an Eighth Amendment violation where a prisoner complained of a "low cell temperature at night combined with a failure to issue blankets")); *see also id.* at 584 (finding sufficiently serious condition where plaintiff spent "decades [in] solitary confinement alongside such conditions of mold, urine, and feces" and where plaintiff claimed he "suffered physical harm as a result of being exposed to such chemicals 'unnecessarily dispensed' by" defendant); *see also Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971) (emphasizing that "there are several cases that have concluded that certain prison conditions were so 'base, inhuman and barbaric' that they violate the Eighth Amendment and that the "common thread that runs through all these cases and that [wa]s not present in our case" was "the deprivation of basic elements of hygiene," and holding that, while

16

"trouble[ing]," there was no Eighth Amendment violation "by the lightless cell, the limited bedding, and the minimal food provided prisoners in solitary confinement" (citing for "common thread" the following: *Wright v. McMann*, 387 F.2d 519 (2d Cir. 1967) (complaint alleged cell encrusted with excrement, plaintiff entirely naked, forced to sleep on concrete floor, windows open throughout subfreezing weather, no soap, towel or toilet paper); *Hancock v. Avery*, 301 F. Supp. 786 (M.D. Tenn. 1969) (hole for waste, flushed irregularly by guard, no soap, towel or toilet paper, prisoner slept naked on floor); *Holt v. Sarver*, 300 F. Supp. 825 (E.D. Ark. 1969) (isolation cells dirty and unsanitary, pervaded with bad odors, plain cotton mattress uncovered and dirty; conducive to spreading, and did spread, infectious diseases); *Jordan v. Fitzharris*, 257 F. Supp. 674 (N.D. Cal. 1966) (cells not cleaned regularly, prisoner had no means to clean himself, a hole for receiving bodily wastes, no flushing mechanism))); *see also LaVergne*, 2020 WL 7090064, at *14 ("Generally, only more extreme deprivations [than conclusory allegations about a lack of air conditioning, being limited to two pre-approved visits per month, and having restraints used during transport] rise to the level of a constitutional deprivation." (citing *Novak*, 453 F.2d at 665 and its authority)).

Additionally, "[c]onfinement to a cell for 23 hours per day does not rise to the level of a constitutional violation." *LaVergne*, 2020 WL 7090064, at *13 (citing *Milton v. Gusman*, No. 10-3309, 2010 WL 5376117 at *1 (E.D. La. Dec. 20, 2010) (citing *Argue v. Hofmeyer*, 80 F. App'x. 427, 429 (6th Cir. 2003) (holding that confinement for 23 hours per day, Monday through Friday is not unconstitutional because it does not impose an atypical and significant hardship); and *Hill v. Pugh*, 75 F. App'x. 715, 721 (10th Cir. 2003) (holding that confinement for 23 hours per day five days a week and 24 hours per day on the remaining two days is not unconstitutional because

it shows neither an unquestioned and serious deprivation of basic human needs nor intolerable or shocking conditions))).

Further, "[w]hile this circuit has noted in the past that deprivation of exercise per se does not violate the cruel and unusual punishment clause, it has also noted that denial of exercise may constitute an impairment of health actionable under the Eighth Amendment." *Hernandez v. Velasquez*, 522 F.3d 556, 560 n.5 (5th Cir. 2008) (internal quotations and citations omitted) (citing, inter alia, *Miller v. Carson*, 563 F.2d 741, 751 n. 12 (5th Cir.1977)). "In the specific context of a health impairment claim, the facts of a case must clearly evince the prisoner's serious medical need and the prison officials' deliberate indifference to it." *Id.* at 561 (cleaned up). "Merely negligent diagnosis or treatment of a medical condition does not state a claim under the Eighth Amendment." *Id.* (citation omitted). Ultimately, the Fifth Circuit has advised "that deprivation of exercise claims should be evaluated on a case-by-case basis using, *inter alia*, the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement." *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008) (citations omitted).

Thus, in *Hernandez*, the Fifth Circuit found that an inmate did not suffer an Eighth Amendment violation by being denied exercise for thirteen months because there was "no indication" that the conditions he suffered ("muscle atrophy, stiffness, loss of range of motion, and depression") "posed a substantial risk of serious harm." 522 F.3d at 560–61. Further, the plaintiff failed to show that "prison officials failed reasonably to address his medical needs," as the evidence showed that they timely responded to plaintiff's sick call requests complaining about the above symptoms. *Id.* at 561–62.

Likewise, in *LaVergne*, this Court denied a conditions-of-confinement claim for lack of exercise, explaining:

> Plaintiff is provided with outdoor exercise three days per week and has failed to provide any facts indicating that the limit on the amount of outdoor exercise he receives has had any detrimental effects to his health. Moreover, the Fifth Circuit has found that one hour of outdoor exercise three days per week is constitutionally sufficient. Thus, Plaintiff has failed to state a claim of constitutional dimension with respect to his complaints of being in a cell 23 hours per day and enjoying three days of outdoor recreation per week for one hour per day.

*LaVergne*, 2020 WL 7090064, at *13.

But, in *Hewitt*, the Fifth Circuit reversed a dismissal of claims as frivolous because:

> The record in the instant case has not been developed on the specifics of the exercise prohibition to which Hewitt has been subject or the particulars of the exercise alternatives available to him. Furthermore, in reaching its conclusion that Hewitt's claims were frivolous and failed to state a claim on which relief could be granted, the district court did not sufficiently inquire into Hewitt's particular conditions of confinement and the exact manner in which the defendants have applied the exercise prohibition to him. For instance, the record is incomplete concerning, inter alia, the particular size of Hewitt's cell or the degree to which in-cell exercise in fact was practicable; whether Hewitt is provided with some form of regular out-of-cell exercise or an otherwise appropriate exercise alternative; whether Hewitt has exposure to fresh air and sunlight during his recreation periods; the amount of time that Hewitt is required to spend in his cell each day; the prospective length of Hewitt's imprisonment; and the amount of time that Hewitt already has been in administrative segregation. These factors and other specific details of Hewitt's conditions of confinement ultimately are determinative of whether Hewitt has stated an Eighth Amendment claim for deprivation of adequate exercise opportunities.

271 F. App'x at 428 (citations omitted).

Similarly, in *Sinclair v. Henderson*, 331 F. Supp. 1123, 1129–31 (E.D. La. 1971), the district court evaluated whether there was a constitutional violation when, for up to nine years, Death Row inmates were housed in 6 feet by 9 feet cells and were allowed out for only 15 minutes

to bathe, wash clothes, and supposedly exercise. *Id.* at 1129–31.  Chief Judge West found cruel and unusual punishment because the inmates were denied a reasonable "opportunity for regular outdoor exercise[.]" *Id.*

### 3. Second Element: Deliberate Indifference

With respect to the second element, "the prisoner must show that the defendant acted with 'more than mere negligence.' " *Hope*, 861 F. App'x at 583 (quoting *Farmer*, 511 U.S. at 835). A "prisoner must show that those prison officials were (1) 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) 'subjectively drew the inference that the risk existed'; and (3) 'disregarded the risk.' " *Id.* (quoting *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (citing *Farmer*, 511 U.S. at 837 (alterations omitted))).

In short, "the prison officials must know of, and disregard, an excessive risk to a prisoner's health or safety." *Id.* (citing *Cleveland*, 938 F.3d at 676). "Evidence that a risk was obvious or otherwise apparent may be sufficient to support an inference that the prison official was aware of the risk." *Id.* (citing *Estate of Cheney ex rel. Cheney v. Collier*, 560 F. App'x 271, 273–74 (2014) (collecting cases).

### 4. Duration in Solitary

In sum, courts in this circuit have denied claims for periods in solitary for nineteen years or longer where plaintiffs have failed to satisfy the *Farmer v. Brennan* standard in whole or in part. *See Fussell v. Vannoy*, No. 13-571, 2016 WL 3538376, at *2–4 (M.D. La. June 22, 2016) (rejecting claim that 27-plus years in solitary was an Eighth Amendment violation because (a) there was a penological justification for the extended lockdown, given plaintiff's 87 disciplinary write-ups, and (b) plaintiff failed to show deliberate indifference because (i) even though Plaintiff alleged psychological disorders arising from his time in solitary, defendant was not a part of the mental

health team, and (ii) in any event, plaintiff was treated for his injuries); *Striz v. Collier*, No. 18-202, 2020 WL 7868102, at *13–14 (S.D. Tex. Nov. 24, 2020) (granting motion for summary judgment on Eighth Amendment claim where Plaintiff did not "make any specific allegations about the conditions of his confinement" in his nineteen years in administrative segregation but only "vague and conclusory allegations," and where Plaintiff failed to show deliberate indifference), *aff'd*, No. 20-40878, 2022 WL 1421834 (5th Cir. May 5, 2022) (per curiam). But, ultimately, "under the Eighth Amendment, 'the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.' " *Hope*, 861 F. App'x at 583 (quoting *Hutto v. Finney*, 437 U.S. 678, 686 (1978)).

### D.  Analysis

Having carefully considered the matter, the Court will grant Defendants' motion.  In short, Plaintiff has failed to adequately plead any Eighth Amendment violation.

Again, to meet the first *Farmer v. Brennan* requirement for a conditions of confinement claim, "the prisoner must show that the conditions, either alone or in combination, constitute an unquestioned and serious deprivation of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Hope*, 861 F. App'x at 582.

Here, Plaintiff alleges that he has been in solitary confinement, with only two short breaks, for over seven and a half years. (*Compl.* ¶ 5, Doc. 1.)  Even worse, Plaintiff pleads that, while at LSP, starting around January 27, 2021, and continuing, Plaintiff was only allowed to leave his 6' x 9' cell in solitary confinement for fifteen minutes, and then only to shower. (*Id.* ¶¶ 8, 18.) Plaintiff complains of a number of conditions, including, "only fifteen minutes a day outside of his cell, and then only to shower[;] possession of no personal property: possession of only one pair of boxers, one towel, one pair of socks, no use of telephone, radio, or television; no access to

reading materials; and visitation privileges." (*Id.* ¶ 22.)   Finally, Plaintiff describes in detail the various mental health medications he was prescribed to deal with the severe mental distress from which he suffers from his time in solitary. (*Id.* ¶ 24.)

The Court is deeply troubled by the terrible (and seemingly unjustified) conditions Defendants have made Plaintiff endure.   But, what is critical is Plaintiff's statement in his opposition: "It bears noting that Mr. Imbraguglio is not complaining of the confinement itself, but rather the illegal unconstitutional length thereof." (Doc. 60 at 5.)  Thus, even if at least some of these conditions (such as only being allowed out of his cell for fifteen minutes a day) may constitute a sufficiently serious condition, *see Sinclair*, 331 F. Supp. at 1129–31, here Plaintiff is only complaining about the duration of his confinement.

As amply demonstrated above, "[l]ong-term solitary confinement is not per se cruel and unusual," *Hope*, 861 F. App'x at 582, and numerous other cases have held that confinements of longer duration were not automatically constitutional violations, *see Fussell*, 2016 WL 3538376, at *3 (rejecting claim for 27-plus year confinement); *Striz*, 2020 WL 7868102, at *13–14 (dismissing claim for nineteen-years in solitary). Thus, though this *Farmer v. Brennan* element could possibly be cured through amendment, Plaintiff ultimately fails at this time to satisfy the first part of his condition-of-confinement claim.

But, more fatally, Plaintiff also fails to satisfy the second requirement: deliberate indifference. Again, a "prisoner must show that those prison officials were (1) 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) 'subjectively drew the inference that the risk existed'; and (3) '*disregarded the risk*.' " *Hope*, 861 F. App'x at 583 (emphasis added) (quoting *Cleveland*, 938 F.3d at 676).

Here, Plaintiff specifically alleges that his "excessive prolonged exposure to solitary confinement" has resulted in "extreme mental health disabilities *for which he was prescribed* Loxapine 10 mg for schizophrenia, Trazadone 150 mg for depression and anxiety, and Sertraline 50 mg for social anxiety, phobia, obsessive compulsive disorder, post-traumatic stress disorder, self-harm, and depression, which conditions continue to exacerbate." (*Compl.* ¶ 24, Doc. 1 (emphasis added).)  Thus, although "[t]he Court does not question that Plaintiff's [many] years in solitary confinement have caused him significant harm," there is no deliberate indifference because "Plaintiff is, by all accounts, actively being treated for the injuries of which he complains." *Fussell*, 2016 WL 3538376, at *4 (citing, *inter alia*, *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (acknowledging that "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference, absent exceptional circumstances); *see also Hernandez*, 522 F.3d at 561–62 (dismissing impairment of health claim because, "[v]iewing this evidence in the light most favorable to Hernandez, it does not show that Defendants wantonly disregarded his medical needs. Rather, it shows that Hernandez was provided with medical care as he requested it.").

Thus, even assuming that Plaintiff had adequately alleged that each Defendant was aware of Plaintiff's severe mental distress and the severe risk of harm to him from his time in solitary, (*see Compl.* ¶¶ 28–46, Doc. 1), a burden which can by itself be difficult to meet, *see Fussell*, 2016 WL 3538376, at *4 (finding no deliberate indifference because defendant was "not, nor has he ever been, a member of LSP's Mental Health Department" such that he would have "some level of control over" that department), Plaintiff has failed to allege that Defendants disregarded that risk so as to be deliberately indifferent to it.  For this additional reason, Plaintiff's Eighth Amendment claims fail.

Plaintiff's reliance on the Louisiana Administrative Code and consent decree of *Ralph v. Dees*, No. 71-94 (M.D. La.), is also misplaced, for the Fifth Circuit rejected similar arguments in *Marshall v. Lynn*, 3 F.3d 440, 1993 WL 347326 (5th Cir. 1993) (unreported per curiam). There, an inmate at LSP filed a § 1983 action "alleging that his constitutional rights were violated because the 1986 Disciplinary Rules and Procedures for Adult Prisoners had not been registered in accordance with the Louisiana Administrative Procedures Act . . . and the consent decree entered in *Ralph v. Dees*, C.A. No. 71-94 (M.D. La. 1975)." *Id.* at *1. The Fifth Circuit dismissed the plaintiff's appeal as frivolous, explaining:

> In order to state a claim under 42 U.S.C. § 1983, the plaintiff must allege a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parrat v. Taylor,* 451 U.S. 527, 535 [ ] (1981). This Court has previously rejected a similar claim, holding in *Martin v. Blackburn,* 581 F.2d 94 (5th Cir. 1978), that a "claim that state officials have failed to follow the procedural provisions of state law, without more, does not aver a cause of action under § 1983." The Louisiana Administrative Procedures Act does not create a liberty interest in the promulgation of prison rules in accordance with state law. *See Welch v. Roemer,* No. 92-3017 (5th Cir. Mar. 18, 1992) (unpublished). Marshall's argument that the consent decree in *Ralph v. Dees* created a protected liberty interest has no merit. Remedial decrees do not create or enlarge constitutional rights and do not serve as the basis of § 1983 liability. *Green v. McKaskle,* 788 F.2d 1116, 1122-23 (5th Cir. 1986).

*Id. See also Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and [Corrections Corporation of America] internal rules and regulations do not alone create federally-protected rights[,] and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." (citations omitted)).  For similar reasons, Plaintiff's claim is not saved by the Louisiana Administrative Code or *Ralph v. Dees* decree.

In sum, Plaintiff fails to state a viable Eighth Amendment conditions-of-confinement claim against any Defendant.  As a result, these claims will be dismissed.

**IV.    LEAVE TO AMEND**

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (citation omitted). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2022).

Here, Plaintiff has not previously amended his complaint in response to a ruling from this Court assessing the sufficiency of his claims. Thus, "the Court will act in accordance with the

'wise judicial practice' and general rule" and allow leave to amend. *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 372–73 (M.D. La. 2022) (quoting *Watkins*, 515 F. Supp. 3d at 519 (citing *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 641–42 (M.D. La. 2018) (deGravelles, J.))); *see also Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result (citing, inter alia, *JMCB, supra*)).

In closing, the Court notes that Defendants briefly attempt to dismiss any due process claim to the extent Plaintiff sought to asserts it. (Doc. 56-1 at 11.)  Defendants focused primarily on the procedures of the ARPs and various hearings in which Plaintiff took part, and they then argue that Plaintiff failed to plead non-conclusory allegations about the deficiencies of any appeal Plaintiff may have taken. (*Id.*)  Plaintiff does not respond to this argument, so, to the extent any such claim was ever made, it has been waived. *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (collecting authorities on waiver), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022).  Nevertheless, without expressing any opinion on whether Plaintiff can adequately plead a due process violation, if Plaintiff intends to assert same, he should clarify the allegations of his complaint and establish the claim's viability. *See Hope*, 861 F. App'x at 580–81 (affirming dismissal of due process claim based on indefinite time in solitary confinement for Texas prisoner)

V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss* (Doc. 56) is **GRANTED.**  All §

1983 claims by Plaintiff against Defendants are **DISMISSED WITHOUT PREJUDICE.**

Plaintiff will be given twenty-eight (28) days in which to amend the *Complaint* to cure any

deficiencies therein.  Failure to do so will result in the dismissal of claims with prejudice and/or

judgment being entered against Plaintiff.

Signed in Baton Rouge, Louisiana, on <u>March 22, 2023</u>.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**