UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DOMINICK IMBRAGUGLIO #522412**

**VERSUS**

**JAMES M. LEBLANC, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL.**

**CIVIL ACTION**

**NO. 22-18-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss First Supplemental and Amending Complaint* (Doc. 73) (the "*Second Motion*") filed by James M. LeBlanc, Secretary of the Department of Public Safety and Corrections ("DPSC"); Seth Smith, Warden of Elayn Hunt Correctional Center ("EHCC") and Chief of Operations of DPSC; Jerry Goodwin, Warden of David Wade Correctional Center ("DWCC"); Darryl Vannoy, Warden of Louisiana State Penitentiary ("LSP"); Timothy Hooper, Warden of EHCC and LSP; Paul Smith, Assistant Warden of LSP; Chadwick Darbonne, Assistant Warden of LSP; Vincent Knight, corrections officer at LSP; Todd Moreau, corrections officer at LSP; Herman Holmes, corrections officer at LSP; Tailor Graffia, agent at LSP; Sheri Barton, agent at LSP, and Lindsey Metz, agent at LSP, all moving in their individual and official capacities, and all referred to collectively as "Defendants." Plaintiff Dominick Imbraguglio ("Plaintiff") opposes the *Second Motion*, (Doc. 76), and Defendants have filed a reply, (Doc. 77). Oral argument is not necessary. The Court has carefully considered the law; the Court's prior *Ruling and Order* (Doc. 63) on Defendants' original *Motion to Dismiss* (Doc. 56) ("*Original Motion*"); the Plaintiff's *First Supplemental and Amending Complaint* (Doc. 69) ("*FSAC*"); and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' *Second Motion* is granted.

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Plaintiff's Original *Complaint* (Doc. 1)**

The following factual allegations are taken from the Court's prior *Ruling and Order*, which summarized the allegations of Plaintiff's original *Complaint*. *See Imbraguglio v. LeBlanc*, No. 22-18, 2023 WL 2601909, at *1–2 (M.D. La. Mar. 22, 2023) (deGravelles, J.). Plaintiff's *FSAC* reasserts paragraphs 3 through 23 of that initial complaint, (*FSAC* ¶ I, Doc. 69), so these allegations remain relevant to the instant motion. In deciding it, the Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

Plaintiff is an inmate housed in LSP. (*Compl.*, Preamble, Doc. 1 at 3.) On or about June 14, 2014, Plaintiff was housed at EHCC, and there he was charged with simple escape. (*Id.* ¶ 3.) Consequently, he was "reclassified to extended lockdown custody and placed upon closed-cell restriction ('CCR')[.]" (*Id.*)

Plaintiff claims that, as a result of this infraction, he was housed in solitary confinement at three different DPSC facilities (EHCC, DWCC, and LSP) from June 14, 2014, to July 2, 2021, "without exception and without any solitary confinement break" in violation of the Louisiana Administrative Code tit. 22, pt. I, § 341, which lists the penalty for such an infraction as 30 days confinement to dormitory, room, or cell and/or up to 10 days of disciplinary detention, for each violation. (*Id.* ¶¶ 4, 6, 7, 8.)

Indeed, Plaintiff "has been held in solitary confinement for a total of 2,708 days over a period of about seven and a half years, or 2,767 days from June 14, 2014, until the time of this filing" of the *Complaint*. (*Id.* ¶ 5.) He has only been out of solitary for 59 days on two separate occasions: on July 2, 2021, for 47 days, and September 20, 2021, for 17 days. (*Id.*)

2

Plaintiff went to the Lockdown Review Board (the "LRB") every 90 days during his time in solitary confinement at each facility. (*Id.* ¶ 10.) After each hearing the LRB decided that Plaintiff would remain in solitary confinement because of "the original nature of his lockdown, Simple Escape," even though this decision violates the above cap on confinement from the Administrative Code. (*Id.*)

Further, on or about January 27, 2021, LSP started to use "an unauthorized schedule of punishment for inmate infractions" named the "Disciplinary Sanctions Matrix," ("Matrix"). (*Id.* ¶ 11.) Plaintiff claims that the "schedule of discipline is not legislatively authorized" for the DPSC and that it "institutes sanctions that are more than nine times the legislative rules." (*Id.*)

On at least four occasions detailed in the *Complaint*, Plaintiff was sentenced pursuant to the Matrix to time in solitary confinement well beyond what was allowed by the Administrative Code. (*See id.* ¶¶ 12–15.) Plaintiff appealed each time, but those appeals were denied by LSP officials Warden Timothy Hooper, Deputy Warden Joseph Lamartiniere, and Assistant Warden Tim Delaney. (*Id.* ¶ 16.)

Plaintiff claims these sanctions, and his consistent placement in solitary, violates not just the Administrative Code but also "*Ralph v. Dees*, C.A.71-94 USDC (Md. LA) [sic], which addressed the entire disciplinary process, including isolation/detention, specifically stating that '*No inmate shall be confined in isolation for a period exceeding ten consecutive days, nor shall [any] inmate [be] confined in isolation for more than 20 days of each calendar month.*'" (*Compl.* ¶ 17, Doc.1) All of this is also "in accordance with federal court issued orders in compliance with the due process guarantees specified in *Wolff v. McDonnell*[,] 94 S. Ct[.] 2963 (1974)." (*Compl.* ¶ 17, Doc. 1.)

3

Additionally, starting around January 27, 2021, and continuing, Plaintiff was only allowed to leave his 6' × 9' cell in solitary confinement for fifteen minutes a day. (*Id.* ¶ 18.) Plaintiff could only do so to shower. (*Id.*) Further, after the January and March disciplinary hearings, Plaintiff "was subjected to strip searches and cell searches every twelve hours[.]" (*Id.* ¶ 19.) Defendants did so despite" *Woodfox v. Phelps* No. 209,535 'H' 19th JDC (1978)) and despite the Administrative Code's prohibition on using such actions as punishment. (*Compl.* ¶ 19, Doc. 1.) There is no penological interest for these searches, as Plaintiff is only let out of his cell for fifteen minutes a day and as he is fully restrained, escorted, and observed during that time. (*Id.* ¶ 20.)

Plaintiff alludes to a due process violation for being unable to "appeal the loss of visitation privileges, or the implementation of strip searches and cell searches every twelve hours[,]" again, in violation of the Administrative Code. (*Id.* ¶ 21.) Further:

> [T]he circumstances and conditions under which Plaintiff Imbraguglio were held in solitary confinement include but are not limited to: only fifteen minutes a day outside of his cell, and then only to shower[;] possession of no personal property: possession of only one pair of boxers, one towel, one pair of socks, no use of telephone, radio, or television; no access to reading materials; and visitation privileges.

(*Id.* ¶ 22.) Moreover, Plaintiff alleges that his visitation privileges were suspended for three months twice in 2021, even though the Administrative Code provides that such privileges can only be lost "[i]f the violation involves visiting." (*Id.* ¶ 23 (italics omitted).)

### B. The Court's *Ruling and Order* (Doc. 63)

Defendants filed their first *Motion to Dismiss* (Doc. 56) the claims against them in the *Complaint*, and, on March 22, 2023, this Court granted that motion. *Imbraguglio*, 2023 WL 2601909, at *15. Specifically, in its *Ruling and Order*, the Court granted Defendant's *Original*

4

*Motion* because (1) Plaintiff's claims for damages against Defendants in their official capacity were barred by the Eleventh Amendment, and Plaintiff made no attempt to satisfy the exception of *Ex Parte Young*, *id.* at *4–5; and (2) Plaintiff's claim of an Eighth Amendment violation failed because (a) Plaintiff complained only about the length of his solitary confinement, and numerous cases have held that confinements of much longer durations were not constitutional violations, *id.* at *11–12, and (b) Plaintiff could not show deliberate indifference because, as pled in the original complaint, Defendants did not disregard the substantial risk of harm Plaintiff faced, *id*. at *12 (citing *Compl.* ¶ 24, Doc. 1 (stating that, "[h]ere, Plaintiff specifically alleges that his 'excessive prolonged exposure to solitary confinement' has resulted in 'extreme mental health disabilities *for which he was prescribed* [various medications] . . . .") (emphasis in original)). The Court gave Plaintiff leave to amend to cure the above deficiencies. *Id*. at *14. The Court also said in closing that, though Plaintiff may have waived his due process argument, the Court would allow him to clarify whether he was attempting to assert same. *Id*.

### C.  FSAC (Doc. 69) and the *Second Motion* (Doc. 73)

Aside from what is accounted above, Plaintiff's *FSAC* changes only two things from the original *Complaint*. First, paragraph 24(a) is amended to the following:

> That the Plaintiff Imbraguglio specifically alleges a violation of his 8th Amendment right which prohibits the infliction of cruel and unusual punishment as the afore described [sic] conditions pose a sufficient serious health [sic], including his mental health and that the prison officials listed herein acted with "deliberate indifference" to such threat and that the above conditions either alone or in combination constitute a serious depravation of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions. These conditions are so base, inhuman, and barbaric that they violate the Plaintiff Imbraguglio's rights. It is further alleged by the Plaintiff Imbraguglio that the afore mentioned Defendants disregarded that risk so as to be deliberately indifferent to it;

5

(*FSAC* ¶ II, Doc. 69.) Thus, any reference to Plaintiff being prescribed medications has been removed.

Second, paragraph 24(b) was added. This paragraph states:

> That the Plaintiff Imbraguglio alleges that the deviation by the Defendants from the administrative (ARP) and the allegations set for the in paragraphs 10 through 17 which show a direct contravention of Louisiana Disciplinary Rules and Procedures for Adult Offenders constitutes a violation of the Plaintiff Imbraguglio's right to due process of law as protected by the provisions of the 5th and 14th Amendments of the Constitution of the United States.

(*Id.* ¶ III.) Thus, in response to the Court's *Ruling and Order*, Plaintiff has attempted to assert a due process claim.

Defendants now move for dismissal of the *FSAC*. (Doc. 73.) In sum, Defendants contend that Plaintiff fails to cure the deficiencies of the prior complaint. (*See id.* at 3.) Defendants further argue that any due process claim fails. (Doc. 73-1 at 6–7.)

## II.    RULE 12 STANDARDS

The Court gave the standard it must use in evaluating Defendants' Rule 12(b)(1) motion in its prior *Ruling and Order*. *See Imbraguglio v. LeBlanc*, No. 22-18, 2023 WL 2601909, at *2–3 (M.D. La. Mar. 22, 2023). That standard need not be repeated here.

As to Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

6

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted).

7

## III.    DISCUSSION

The *Second Motion* is straightforward and requires no exquisite recitation of the parties' arguments. The two issues boil down to (1) whether Plaintiff cured the deficiencies of his prior *Complaint* with respect to his Eighth Amendment claim, and (2) whether Plaintiff adequately pled a violation of his right to due process.

The first question is easily answered. Even considering the *FSAC* in a light most favorable to Plaintiff and drawing reasonable inferences in his favor, the *FSAC* fails to state a viable Eighth Amendment claim against any Defendant.

As stated above, the only changes Plaintiff made were to paragraph 24—again, to remove any reference to Defendants treating Plaintiff for any harm he suffered from the solitary confinement. Even assuming this cured one problem with the prior complaint (*i.e.*, that Defendants disregarded the risk Plaintiff faced), Plaintiff still fails to overcome the other problem identified in the Court's ruling: that, based on numerous cases, the duration of his solitary confinement was not constitutionally excessive. *See Imbraguglio*, 2023 WL 2601909, at *11–12. Critically, for purposes of a Rule 12(b)(6) motion, the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions," *In re Great Lakes Dredge & Dock*, 624 F.3d at 210 (cleaned up), and all of Plaintiff's new allegations fall into this category. As a result, Plaintiff's Eighth Amendment claim against Defendants in their individual capacity must be dismissed.

Moreover, Plaintiff makes no effort to deal with the Eleventh Amendment issue. Thus, for the same reasons as in the prior ruling, Plaintiff's claims for damages against Defendants in their official capacity must fall.

The second issue requires more explanation but reaches the same result. "To determine what process is due, we address two inquiries: '(1) whether there exists a liberty . . . interest which has been interfered with by the State and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Hope v. Harris*, 861 F. App'x 571, 580 (5th Cir. 2021) (per curiam) (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228–29 (5th Cir. 2020) (citation omitted)).

Defendants contend that Plaintiff alleges that he went before a review board every 90 days during his time in administrative segregation and that he was given an opportunity to appeal each sanction; thus, he was given all process that was due. (Doc. 73-1 at 6.) Further, Defendants say that Plaintiff's allegations on this claim are conclusory, amounting to nothing more than the accusation that the duration of his confinement was excessive. (*Id.* at 7.)

And herein lies the problem. Plaintiff offers virtually no argument on why his due process claim survives. (*See* Doc. 76.) In fact, the only mention of "due process" in Plaintiff's *Opposition* is a single sentence, following his reference to how his confinement violates the Administrative Code and *Ralph v. Dees*, that "All of this is also in accordance with federal court issued orders in compliance with the due process guarantees specified on *Wolff v. McDonnell* [,] 94 S. Ct. [,] 2963 (1974)." (Doc. 76 at 2 (citations omitted).) Putting aside the fact that this same sentence was made in the original *Complaint*, *Imbraguglio* 2023 WL 2601909, at *2, and putting aside that the Court found that this sentence was not enough to clearly articulate whether Plaintiff alleged a due process claim, *id.* at *14, Plaintiff now makes no effort to apply or explain *Wolff*. (*See* Doc. 76.) Moreover, Plaintiff makes no reference to *Hope*, which this Court directed Plaintiff to when advising him to clarify whether he asserted a due process claim. *See Imbraguglio*, 2023 WL 2601909, at *14.

As the Court explained in its last ruling, the failure to adequately respond to an argument on a motion to dismiss constitutes waiver. *See id.* (citing *Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (citing, *inter alia*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) ("failure to brief an argument in the district court waives that argument in that court." (citation omitted); and then citing *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."))). On this ground alone, Plaintiff's due process claim could be dismissed.

But, even if the Court examined the sufficiency of Plaintiff's claim, it would fall. Assuming Plaintiff had a liberty interest arising from an indefinite stay in solitary confinement, *see Hope*, 861 F. App'x at 580 (citation omitted),

> to determine what process is due, we look to the framework established in *Mathews v. Eldridge*, 424 U.S. 319 [ ] (1976), which "requires consideration of three distinct factors," namely (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005)] (quoting *Eldridge*, 424 U.S. at 335 [ ]).

*Id.* Even though Plaintiff, like the Plaintiff in *Hope*, had an interest that was "'more than minimal,' it 'must be evaluated . . . within the context of the prison system and its attendant curtailment of liberties.'" *Id.* (quoting *Austin*, 545 U.S. at 225). "Put differently, [the Court must] look to how much liberty [Plaintiff] is deprived of over and above what would normally be incident to prison life." *Id.*

Concerning the risk of erroneous deprivation, the *Hope* court considered whether the inmate had "notice of the factual basis leading to consideration for [solitary] placement" and "a fair opportunity for rebuttal." *Id.* (quoting *Austin*, 545 U.S. at 225–26). "Where the government gives a prisoner an opportunity 'to submit objections prior to the final level of review,' that decreases the likelihood of erroneous deprivation." *Id.* (quoting *Austin*, 545 U.S. at 226). Thus, in *Hope*, plaintiff had received notice of the basis for his placement in solitary: "his escape record." *Id.* Even though the inmate claimed his designation as an escape risk had been removed, the inmate "concede[d] that the basis for his present placement in solitary remains 'an incident that will never change from over 23 years ago.'" *Id.* Thus, "he ha[d] notice." *Id.* The inmate also had an opportunity to rebut those allegations, as he "ha[d] attended at least forty-eight hearings and ha[d] made statements during those hearings." *Id.*

On the last factor, the Fifth Circuit found this also weighed in the defendant's favor:

> Finally, turning to the government's interest, Texas's "first obligation must be to ensure the safety of . . . the public." [*Austin*, 545 U.S. at 227 [ ]. Moreover, given the scarce resources of prison systems, we must "give substantial deference to prison management decisions before mandating additional expenditures for elaborate procedural safeguards." *Id*. at 228 [ ]. Based on the pleadings before us, Texas's interest in keeping the public safe from [the plaintiff inmate], who has previously escaped, weighs in favor of finding that [the inmate] has been given adequate process.

*Id.* at 580–81. Thus, the Fifth Circuit affirmed the dismissal of the due process claim. *Id.* at 581.

Having carefully considered the matter, Plaintiff has failed to demonstrate how his case is materially different from *Hope*. As in *Hope*, Plaintiff was originally charged with simple escape, (*Compl.* ¶ 3, Doc. 1.) Thus, he had notice of the basis for his time in solitary. Moreover, Plaintiff alleges that he went to the Lockdown Review Board every 90 days during his time in solitary confinement at each facility. (*Id.* ¶ 10.) After each hearing the LRB decided that Plaintiff would remain in solitary confinement because of "the original nature of his lockdown, Simple Escape." (*Id.*) He also appealed each time, though those appeals were dismissed by LSP official Defendants. (*Id.* ¶ 16.) Thus, there's no allegation that he was denied an opportunity to present objections. Finally, as in *Hope*, Louisiana has an interest in ensuring safety to the public, and the Court must give substantial deference to the prison's decisions on this issue. If the due process claim was rejected in *Hope*, where the plaintiff was no longer a flight risk but was still held in solitary for over two decades, then, *a fortiori*, the instant due process claims must fall.

Finally, Plaintiff will be denied further leave to amend.

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment.

*Henderson v. Bd. of Supervisors of S. Univ. & A&M Coll.*, 663 F. Supp. 3d 542, 581 (M.D. La. 2023) (deGravelles, J.) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

Here, Plaintiff had the benefit of being granted leave to amend and was even given the citation to *Hope*. Yet, despite this, he failed to cure the deficiencies of the *Complaint*. Moreover, the Court finds that further attempts to amend would be futile. Plaintiff remains unable to cure the problems outlined in the last ruling. For these reasons, Plaintiff's individual capacity claims

will be dismissed with prejudice. *See id.* (denying leave to amend for the same reasons) (citing *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 679 (M.D. La. 2019) (deGravelles, J.) (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment would be futile); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321–22 (M.D. La. 2021) (deGravelles, J.) (same); *Martin v. Roy*, No. 20-339, 2022 WL 894599, at *13 (M.D. La. Mar. 25, 2022) (deGravelles, J.) (same)).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss First Supplemental and Amending Complaint* (Doc. 73) filed by James M. LeBlanc, Secretary of the DPSC; Seth Smith, Warden of EHCC and Chief of Operations of DPSC; Jerry Goodwin, Warden of DWCC; Darryl Vannoy, Warden of LSP; Timothy Hooper, Warden of EHCC and LSP; Paul Smith, Assistant Warden of LSP; Chadwick Darbonne, Assistant Warden of LSP; Vincent Knight, corrections officer at LSP; Todd Moreau, corrections officer at LSP; Herman Holmes, corrections officer at LSP; Tailor Graffia, agent at LSP; Sheri Barton, agent at LSP, and Lindsey Metz, agent at LSP is **GRANTED**. All claims against Defendants in their official capacity are **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment. All claims against Defendants in their individual capacities are **DISMISSED WITH PREJUDICE** for failure to state viable claims.

Signed in Baton Rouge, Louisiana, on <u>March 6, 2024</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**